UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| vs. | ) | CAUSE NUMBER 3:12-CR-63 RLM |
| | ) | |
| RONALD BOHN | ) | |

OPINION AND ORDER

Ronald Bohn has moved to suppress tangible statements and evidence developed from a series of searches of a residence on April 18, 2012. The court heard evidence and argument on April 6, and now denies the motion.

I

The events at issue in this case took place about three years ago. Three-year-old events can tax the human memory, as shown by the hearing conducted on defendant Ronald Bohn's motion to suppress on April 6. The witnesses' tiring memories make it impossible to find all the case's factual details with any level of confidence, but facts that can be found require the court to deny the motion.

Mr. Bohn was on parole arising from a felony conviction in Michigan. In 2010, he and his parole moved to Indiana. Mr. Bohn met with state parole officer Michael Adams, who explained the rules about being on parole in Michigan. Mr. Bohn signed a paper saying that he understood those rules. Those rules included this:

> I understand that I am legally in the custody of the Department of Correction and that my person and residence or property under my control may be subject to reasonable search by my supervising officer

> or authorized official of the Department of Correction if the officer or official has reasonable cause to believe that the parolee is violating or is in imminent danger of violation a condition to remaining on parole.

David Hartzler became Mr. Bohn's supervising officer in November 2010.

The rest of the events in this case all took place in 2012 unless a different year is specified.

Mr. Bohn owned a house located on Koher Road in Syracuse, Indiana. When he bought it, he told Mr. Hartzler he wasn't going to move into the Koher Road house until spring. Mr. Bohn's file said he lived with his daughter at her home on Grandview (and had since he came to Indiana). Mr. Bohn never told Mr. Hartzler that he had moved from the Grandview address.

On April 18, Nicole Gingrich called Mr. Hartzler. She reported that as she drove her daughter Rowen and Rowen's boyfriend to school a pill bottle appeared. Rowen and her boyfriend said the bottle contained Vicodin, Oxycontin and morphine. Rowen said she and her friends were getting drugs at Mr. Bohn's house on Koher Road. The boyfriend said Mr. Bohn had guns and more drugs at the Koher Road house.

Mr. Hartzler was familiar with Nicole and Rowen Gingrich, as well as the house of Koher Road before April 18. He had gone to the house on February 12 after an anonymous report that Mr. Bohn was providing girls with drugs at the house (and that some of the girls were then selling what they got from Mr. Bohn). Mr. Hartzler went to the Koher Road house, where he encountered Mr. Bohn,

2

Terry Young, and 15-year-old Rowen Gingrich. When Mr. Hartzler asked why a 15-year-old girl was there, Mr. Bohn said he was tutoring her. Mr. Bohn asked Rowen Gingrich to call her mother. Nicole Gingrich came to the house and assured Mr. Bohn that everything was fine. While at the Koher Road house, Mr. Hartzler noticed a large brass porthole fitting.

Terry Young testified telephonically at the suppression hearing. He said he signed a 6-month lease for the Koher Road house in January, and advanced three months' rent. Mr. Young testified that while he was at the Koher Road house on February 12, Mr. Hartzler asked to walk through the house, and Mr. Bohn said Mr. Hartzler would have to ask Mr. Young, who gave permission.

After getting Mrs. Gingrich's call on April 18, Mr. Hartzler met with his supervisor, Bobby Yarborough, and they decided Mr. Hartzler had reasonable cause to believe Mr. Bohn was violating his parole, so Mr. Hartzler should search the Koher Road house. Mr. Hartzler didn't tell Mr. Yarborough that Mr. Bohn had rented the house to Mr. Young (if, indeed, Mr. Hartzler understood that to be the case). Because of the report that guns were at the house, Mr. Hartzler asked the county police to send officers with him.

The county police had been investigating a series of burglaries that had taken place in an area in which Koher Road was located. Detective Joshua Spangle had gotten word from an anonymous source that a man named Bohn had been taking property from his employer and had stored the stolen goods at his

3

home. Detective Spangle didn't know who this Bohn fellow was, or where his home was located. He called Officer Shane Bucher, who had been assigned to the area, to see what he could find out.

When Detective Spangle called, Officer Bucher had just been directed to accompany Mr. Hartzler to what he understood to be Mr. Bohn's home on Koher Road. Officer Bucher told Detective he was just leaving for Mr. Bohn's place on Koher Road. Detective Spangle told him to keep an eye out for brass and bronze ship-related items. Officer Bucher told Mr. Hartzler and Officer Chris Anderson about Detective Spangle's call when they reached the Koher Road house.

Mr. Hartzler knocked on the door of the Koher Road house, with Officer Bucher standing next to him. Mr. Bohn came to the door, looking as if he had just gotten out of bed. With the door open, Mr. Hartzler and Officer Bucher could see through to a bedroom where, amid clothes on the floor, the saw a brass porthole leaning against a dresser.

Mr. Hartzler told Mr. Bohn he had come to conduct a parole search of the house. He took a urine sample from Mr. Bohn to conduct a drug screen while Officer Bucher performed a protective sweep of the house and concluded no one else was in the house. Mr. Hartzler placed handcuffs on Mr. Bohn and had him remain on the porch with the officers. Mr. Hartzler entered the house to search it.

After a search of more than 30 minutes, Mr. Hartzler discovered a prescription pill bottle containing what appeared to be marijuana. He brought it

to Indiana State Trooper Braden Wentworth, who was at the scene, for a field test. When the field test came up positive, Mr. Hartzler stopped searching the house and cooperated with county police officers in obtaining a search warrant for the property.

Mr. Hartzler photographed the pill bottle with the blade of a machete that was found on property and the field test kit. He also photographed the machete separately. The two photos bear different dates: the photo with the pill bottle is date-stamped 4/18/12, and the other is date-stamped 4/16/12. Mr. Hartzler took both photos on his phone, and says he took them both on the same day. Mr. Hartzler says his phone must have flipped dates while he took the pictures. Mr. Bohn says that explanation is far fetched, and that Mr. Hartzler must have been on the property on April 16, photographing the machete. The court agrees that Mr. Hartzler's explanation is unpersuasive, but the finding leads nowhere. The record contains no hint of why Mr. Hartzler might have been on the Koher Road property two days before Ms. Gingrich called him, or what other facts might be concealed under the date stamped on the photo.

Officer Anderson, whose November 28, 2012 deposition was introduced in evidence when he failed to appear for the suppression hearing despite a subpoena, offered a different version of the search. He testified that about a half hour into the search, Mr. Hartzler summoned him into the house to photograph the porthole and a deer statute that were thought to have been stolen property. Officer

5

Anderson said that the property was in plain sight in the bedroom and that he photographed the items with his iPhone and sent the photos to Detective Spangle.

The court had no opportunity to evaluate Officer Anderson's demeanor, making it more difficult to weigh his testimony about the facts. On this record, his recollection of the events makes no sense. Mr. Hartzler had both an iPhone and a belief he had the right to be in the home. It makes little sense that rather than taking the photos himself, he would summon someone who he didn't think had a right to be in the house. Second, if Detective Spangle had photos of items suspected to have been stolen, the record suggests no reason why his application for the search warrant spoke only of drugs and ledgers. Mr. Hartzler's photos of the property would provide more than ample probable cause for the warrant to include brass and bronze ship-related items. But Detective Spangle's application made no mention of suspected stolen property.

For the same reasons, the court finds that Travis Vanover (Mr. Bohn's son-in-law) is mistaken when he recalls that he was asked to enter the house with police officers at 3:40 p.m. to identify what was being called stolen property.

A Kosciusko County court issued a search warrant at 6:15 p.m. Mr. Bohn had remained handcuffed on the porch for nearly the entire time, though officers twice escorted him inside to use the restroom.

When Detective Spangle arrived with the search warrant, Mr. Hartzler asked to retrieve his wallet before he was taken to jail. Officers took him to the bedroom

6

and retrieved the wallet from the dresser drawer to which Mr. Bohn had directed them. Still in the messy bedroom, Detective Spangle asked if there was anything the house that might hurt the officers as they searched. Mr. Bohn pointed to the butts of two long guns extending from beneath the bed, and described where a handgun might be found under clothes on the bedroom floor.

While executing the warrant, the officers found guns, drugs (though not Vicodin, Oxycontin, or morphine pills), and items they associated with ten burglaries.

Terry Young — Mr. Bohn's tenant — testified by telephone from Florida, a place from which he can't travel. Mr. Young testified that he left the Koher Road house very quickly a week or two before April 18 due to a family medical emergency. He had planned to return, but illnesses kept him in Florida. He testified that he left all his personal belongings in the house.

Selena Vanover (Mr. Bohn's daughter) testified that Mr. Bohn lived with her and her family the entire time he was out of prison and jail, and that he spent the night before April 18 at her house on Grandview. It was Mr. Bohn's job to get Ms. Vanover's daughter ready for, and to, school after Ms. Vanover left for work.

II

Mr. Bohn seeks to suppress all the tangible evidence found on April 18, as well as his own statements to Detective Spangle. He says the search couldn't have

been a parole search because he didn't live at the Koher Road house; that if the parole search was legitimate, it was pretextual for an investigatory search looking for stolen property; that the warrant was defective because the investigators withheld from the issuing judge the fact that Mr. Bohn had leased the Koher Road house to Mr. Young; and that his statement to Detective Spangle was the product of custodial interrogation and he hadn't been read his *Miranda* rights.

A

Mr. Bohn says he wasn't a resident, and didn't have a right to control, the Koher Road property, so Mr. Hartzler's search of that property exceeded the authority of his supervising parole officer. Mr. Hartzler's argument is self-defeating: as a general matter, one has no reasonable expectation of privacy in another's property. The court of appeals succinctly explained the matter of standing under the Fourth Amendment:

> The question of Fourth Amendment standing is "one involving the substantive question of whether or not the proponent of the motion to suppress has had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." To have standing to challenge the search and seizure in this case, Walton bears the burden of establishing that he had both a subjective and an objectively reasonable expectation of privacy. An objective expectation of privacy is one that "that society is prepared to recognize as 'reasonable.' " The subjective prong of the expectations analysis presents a fact-specific inquiry that looks "to the individual['s] affirmative steps to conceal and keep private whatever item was the subject of the search."

United States v. Walton, 763 F.3d 655, 658 (7th Cir. 2014) (citations omitted). Stated even more simply, "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, 439 U.S. 128, 133-134 (1978). Mr. Bohn needn't claim ownership of the contraband found in the house, but he must show a reasonable expectation of privacy in the area that was searched. Gardner v. United States, 680 F.3d 1006, 1010 (7th Cir. 2012).

Mr. Bohn doesn't fall within any of the exceptions to that general rule. Being a landlord gives him no reasonable expectation of property in the leased premises if he has no right to control it. *See* Ryan v. Mary Immaculate Queen Center, 188 F.3d 857 (7th Cir. 1999) (police couldn't search apartment on strength of landlord's consent).

If he had no reasonable expectation of privacy in the area searched, Mr. Bohn has no standing to seek suppression of the fruits of the searches. But, as will be discussed next, he had such an explanation by virtue of his right to control the Koher Road premises.

B

Whether Mr. Bohn was residing at the Koher Road house doesn't resolve anything concerning this motion. The parole rules to which he agreed authorized

9

his parole officer to make a reasonable search of "property under [Mr. Bohn's] control" upon reasonable grounds. The Koher Road house was "property under [Mr. Bohn's] control." His tenant had been hundreds of miles away for days or weeks; his presence in the house when Mr. Hartzler knocked on the door shows that he had access; the twenty prescription bottles in Mr. Bohn's name show that he was using the house as his own even if he was sleeping at his daughter's house.

C

Mr. Hartzler had more than reasonable cause to search that house for drugs. Nicole Gingrich had reported that her daughter claimed to have gotten controlled substances from Mr. Bohn at that address, and that her daughter's boyfriend had backed her up on that. Mr. Bohn says that wasn't enough; that more was needed to corroborate the tip. There was more. Mr. Hartzler had met Rowen Gingrich at the Koher Road house two months earlier. And the tipster wasn't anonymous; Mr. Hartzler had met Nicole Gingrich at the Koher Road house two months earlier, too. The tip came from a person known to Mr. Hartzler relating to Mr. Bohn providing Rowen with drugs at a place Mr. Hartzler knew to be associated with both Mr. Bohn and Rowen Gingrich.

E

Nor was Mr. Hartzler's search a pretext for investigation into the burglaries or stolen property. Mr. Hartzler didn't learn that stolen property might be at the Koher Road property until he had conferred with his superior, requested a police escort, and arrived at the Koher Road property. The parole search was planned without any knowledge that the police might have any interest in Mr. Bohn apart from drugs. As for the drugs, Mr. Hartzler had ample independent reason to find out if a person serving a felony sentence in Indiana was dispensing pills to fifteen-year-olds.

F

Mr. Bohn challenges the search warrant, contending that the investigators withheld the fact that Mr. Bohn had leased the Koher Road house to Mr. Young — more specifically, that Mr. Hartzler withheld that fact. Mr. Hartzler didn't tell his supervisor or the county police that his file showed Mr. Bohn's address as his daughter's house on Grandview, and that neither Mr. Bohn nor anyone else had told him anything to the contrary.

A search warrant can't stand if the warrant affidavit knowingly or recklessly contained false or inaccurate information necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154 (1978). Mr. Bohn's relationship to the Koher Road property wasn't relevant to whether probable cause existed for a

warrant to search that property. "'Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime.'" United States v. Sutton, 742 F.3d 770, 773 (7th Cir. 2014) (quoting United States v. Harris, 464 F.3d 733, 738 (7th Cir. 2006)). Probable cause existed to believe that drugs were being distributed to children from the house on that property. That the name of the suspect was known added to the probable cause, but the existence of probable cause was unaffected by whether he was the owner, the occupant, or a dealer working out of someone else's house. There was enough information for a reasonably prudent person to think a search of the property would disclose evidence of a crime.

G

Finally, Mr. Bohn contends that the response he gave when Detective Spangle asked if there was anything in the house that might harm the police as they executed the search warrant — pointing out two firearms and telling him where to look for a third — must be suppressed because he was in custody (he had been handcuffed for several hours by then) and hadn't been read his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The officers had reason to believe guns were in the house — Rowen Gingrich's boyfriend had said guns and drugs in the house and Mr. Hartzler had found drugs — so asking if anything in the

12

house might harm them didn't offend *Miranda.* New York v. Quarles, 467 U.S. 649, 655-656 (1984).

III

For all of these reasons, the court DENIES the defendant's motion to suppress tangible evidence and statements [Doc. No. 14].

SO ORDERED.

ENTERED:  April 7, 2015 

/s/ Robert L. Miller, Jr.  
Robert L. Miller, Jr., Judge  
United States District Court